```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
Jason Sciabarrasi,

                        Plaintiff,           07-CV-00328

              v.                             **DECISION**
                                             **and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security

                        Defendant.
_____
```

## Introduction

Plaintiff Jason Sciabarrasi ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits and Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") Richard A. Kelly, denying his application for benefits was against the weight of substantial evidence contained in the record and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c), on the grounds that ALJ Kelly's decision was supported by substantial evidence contained in the record and was based on the correct application of appropriate legal standards.

---

[1] This case was transferred to the undersigned by the Honorable John T. Curtin, Judge, United States District Court for the Western District of New York by Order dated September 28, 2009.

For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings.

**Background**

On May 26, 2004, Plaintiff, at that time a 26 year-old food preparer and salesman, filed an application for Disability Insurance Benefits under Title II, §§ 216(i) and 223 of the Social Security Act ("the Act") and for SSI under § 1614(a)(3)(A) of the Act. Plaintiff claimed a disability since December 1, 1999 due to "drug depen[dency], depression, anxiety disorder, panic attacks, ulcerative colitis, lower back pain, [and] l-5 s-1 disc problems." (Transcript of the Administrative Proceedings at pages 61, 73-74) (hereinafter "Tr."). Plaintiff's application was denied by the Social Security Administration ("the Administration") initially on September 15, 2004. (Tr. at 43). Plaintiff filed a timely request for an administrative hearing on November 3, 2004. (Tr. at 48, 49).

Thereafter, Plaintiff appeared via video conference, with counsel, at an administrative hearing before ALJ Richard A. Kelly on November 21, 2005. (Tr. at 429). In a decision dated January 31, 2006, the ALJ determined that Plaintiff was not entitled to disability benefits and was not eligible for SSI. (Tr. at 31). The Social Security Appeals Council ("the Council") initially denied Plaintiff's request for review on July 14, 2006. (Tr. at 416). The Council vacated that denial to allow Plaintiff to submit additional

information on August 16, 2006. (Tr. at 420). After considering the additional information, the Council again denied Plaintiff's request for review on March 22, 2007. (Tr. at 12). The Council set aside their March 22, 2007 denial to consider additional information. (Tr. at 7). The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on May 3, 2007 after considering additional information. (Tr. at 7). On May 21, 2007, Plaintiff filed this action.

## **Discussion**

**I. Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the

Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II. The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

   **A. The ALJ properly applied the five-step analysis to conclude that Plaintiff was not disabled under the Act.**

The Act defines disability as "physical or mental impairment or impairments [. . .] of such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . . An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would [. .

.] be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 223(d)(2) and 1614(a)(3).

In this case, although the ALJ found that Plaintiff was under a disability, the ALJ found Plaintiff's substance use disorder to be a contributing factor material to the determination of disability because Plaintiff could only be determined to be disabled if he continued the substance use. (Tr. at 21, 30). Therefore, the ALJ properly concluded that Plaintiff was not considered disabled within the meaning of the Act. (Tr. at 21).

In reaching his conclusion, the ALJ adhered to the Administration's 5-step sequential analysis for evaluating applications for disability benefits. See 20 C.F.R. § 404.1520.[2] Under Step 1 of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to this decision. (Tr. at 23).

At Step 2, the ALJ found that Plaintiff suffered from the severe impairments of substance addiction disorder, in apparent remission since June 2002, colitis, degenerative disc disease,

---

[2]Five-step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, the third inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in Appendix 1 of the Social Security Regulations, and if so, claimant will be considered disabled without considering vocational factors; (4) if claimant does not have a listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work, ALJ determines whether claimant could perform other work. See id.

status post lumbar disc surgery, and chronic low back pain. (Tr. at 23). The ALJ went on to find that after Plaintiff ceased the substance use, his remaining limitations continued to result in a severe impairment or combination of impairments. (Tr. at 28).

At Step 3 of the 5-step analysis, the ALJ concluded that Plaintiff's impairments, including the substance use disorder, met or medically equaled the requirements listed in §§ 12.09 and further defined in Listings 12.04 and 12.06 of 20 CFR 404, Subpart P, Appendix 1. (Hereinafter "the Listings"). (Listings 12.09 (Substance Addiction Disorders), 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders)) (Tr. at 23).

In reaching this conclusion, the ALJ found that Plaintiff's substance use disorder impairment, prior to remission, resulted in "marked restriction in activities of daily living, mild difficulties with social functioning, marked difficulties in maintaining concentration, persistence and pace, and 1-2 episodes of decompensation, each of extended duration." (Tr. at 23).

The ALJ next found that after excluding Plaintiff's substance use disorder beginning with the June 2002 remission, Plaintiff's impairments no longer met or medically equaled the impairments in the Listings. (Tr. at 28). In reaching this conclusion, the ALJ found the record lacked evidence that Plaintiff's physical impairments met the requirements of the Listings. (Tr. at 28). The ALJ also stated that Plaintiff's depression and anxiety disorder

resulted in mild restrictions that also did not meet the requirements of the Listings. (Tr. at 28).

Further, at Step 4, the ALJ found Plaintiff unable to perform his past relevant work as a salesperson (classified as semiskilled medium exertional work) or as a food preparer (classified as unskilled light exertional work). (Tr. at 29). The ALJ also found Plaintiff's residual functional capacity ("RFC") to include the ability to "lift/carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk about 6 hours in an 8 hour workday; sit at least 6 hours in an 8 hour workday; and push and pull at least up to his lifting capacity." (Tr. at 29).

In addition, after Plaintiff stopped his substance use, the ALJ found that Plaintiff had the RFC "to follow, understand and remember simple directions and instructions, perform simple tasks, maintain attention/concentration, maintain a regular schedule, and was capable of learning new tasks." (Tr. at 29). However, the ALJ also found that Plaintiff would have difficulty with learning new tasks, making decisions, relating to others and dealing with stress. (Tr. at 29).

Finally, at Step 5, the ALJ found that if Plaintiff continued in remission from substance use, considering Plaintiff's age, education, work experience and RFC, jobs exist in the regional and national economy which Plaintiff can perform. (Tr. at 29). Specifically, the ALJ found that the Plaintiff can perform the job duties of a commercial cleaner, and products assembler. (Tr. at 30).

The ALJ found that the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. at 19). In reaching this finding, the ALJ relied on the testimony of the vocational expert. (Tr. at 30).

The ALJ properly applied the five-step analysis and properly found Plaintiff's substance use to be a material contributing factor to his disability. Therefore, I find that the ALJ properly concluded that Plaintiff was not disabled within the meaning of the Act.

### B. The ALJ properly rejected the treating physician's statement regarding Plaintiff's ability to work.

Plaintiff contends the ALJ improperly rejected as controlling Dr. Wolin's Medical Source Statement. (Plaintiff's brief at 8).

The Commissioner has the authority to regulate the nature, extent and manner of taking and furnishing evidence in order to establish the right to Social Security disability benefits. 42 U.S.C. 405(a). In accordance with this authority, the Commissioner has chosen to give evidentiary weight to the opinion of treating physicians in disability cases. 20 C.F.R. 404.1527(d)(2). When an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must apply the following factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant

factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

In this case, the ALJ's decision did not address the opinion of Plaintiff's treating physician as required by the "treating physician rule" analysis. (Tr. at 7). However, omission of the "treating physician rule" analysis does not always require remand for further proceedings when the treating physician's opinion is inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004).

The ALJ properly rejected as controlling treating psychiatrist Dr. Wolin's Medical Source Statement ("the statement") dated August 15, 2005. (Tr. at 27). The ALJ must clearly state his reasoning when electing not to give a treating physician's opinion controlling weight. See Schaal, 134 F.3d at 506 (2d Cir. 1998). In this case, after detailing the evidence considered, the ALJ stated that he rejected the statement as "inconsistent with the doctor[']s own treatment notes."(Tr. at 27).

In his statement, Dr. Wolin circled that Plaintiff had "extreme" restrictions in activities of daily living and maintaining attention, circled that Plaintiff was deficient in concentration, persistence or pace, circled that Plaintiff had repeated episodes of deterioration or decompensation in work settings, and checked off blocks to indicate "marked" functional work-related limitations. (Tr. at 27, 370-72).

The record supports the ALJ's determination that Dr. Wolin's treatment notes do not support these conclusions. Specifically, Dr. Wolin stated in his treatment notes on April 16, 2003, that Plaintiff was "generally doing well from a psychiatric perspective" and expressed concern only that Plaintiff's desire to return to school would be stressful on his back. (Tr. at 223). On July 16, 2003, Dr. Wolin stated "[c]linically [Plaintiff] appears quite stable" and expressed no concern about Plaintiff's acceptance at a local college. (Tr. at 222). On November 4, 2003, Dr. Wolin stated that Plaintiff's participation in a forklift training program was a "reasonable activity." (Tr. at 221). On February 4, 2004, Dr. Wolin stated his intention to refer Plaintiff for job coaching. (Tr. at 220). On June 21, 2004, Dr. Wolin stated in a letter to the NYS Office of Temporary and Disability Assistance that Plaintiff felt his criminal history caused his inability to obtain employment. (Tr. at 217). However, in the same letter, Dr. Wolin opined that Plaintiff was "disabled for competitive employment". (Id.) Dr. Wolin noted Plaintiff's enhanced anxiety level on August 3, 2004 but did not increase the dosage of any medication. (Tr. at 359). On November 2, 2004, Dr. Wolin noted Plaintiff's "substantial" anxiety level and increased the dosage of the anxiolytic drug, Paxil. (Tr. at 357). Dr. Wolin noted on February 7, 2005 that Plaintiff "is very reluctant to get into any kind of job training or job rehabilitation. [Plaintiff] is concerned that despite the fact that

he is doing relatively well now, that circumstances could easily change." (Tr. at 356).

The ALJ also considered the counseling treatment notes from Plaintiff's methadone therapy in making his determination. (Tr. at 25). In June 2003, these notes stated that Plaintiff was doing well, attending group and self help and had developed a positive outlook. (Tr. at 243). In August 2003, the notes stated that Plaintiff would enter college in the fall to complete his degree. (Id.) In October, 2003, the notes stated Plaintiff enjoyed getting out daily and was employed through the NYS Office of Vocational and Educational Services for Individuals with Disabilities. (Tr. at 240). The February 2004 notes stated that Plaintiff's goals were to maintain employment and return to school. (Tr. at 238).

In making his determination, the ALJ also considered an adult psychiatric evaluation performed July 15, 2004 by consultative physician, Dr. Thomas Ryan. (Tr. at 26). Dr. Ryan stated Plaintiff had a depressed and anxious affect, and dysthymic mood. (Tr. at 245). In addition, Plaintiff's attention, concentration and memory skills were intact, cognitive functioning was average, insight and judgment were poor. (Tr. at 246). Dr. Ryan stated that Plaintiff was able to follow and understand simple directions, perform simple tasks, maintain a regular schedule and learn some new tasks. Id. Dr. Ryan also reported Plaintiff would have difficulty with complex tasks, decision making, relating with others and dealing with stress. Id.

The ALJ also considered the psychiatric review of Disability Determination Services consultative physician George Burnett, dated September 14, 2004. (Tr. at 27). Dr. Burnett reported that Plaintiff suffered from depressive disorder not meeting the listed diagnostic criteria, panic disorder, and polysubstance addiction disorder in remission. (Tr. at 308). Dr. Burnett further reported that the degree of limitation of Plaintiff's disorders did not meet the functional criterion of the Listings. (Tr. at 308).

Finally, the ALJ considered the medical reports from treating physician, Dr. Balon. (Tr. at 24). In a report dated July 2002, Dr. Balon stated medication "controlled pretty well" Plaintiff's anxiety with panic attacks and depression. (Tr. 24, 151).

The ALJ considered the evidence of Dr. Wolin, Dr. Ryan, Dr. Burnett, Dr. Balon, and notes from Plaintiff's methadone therapy sessions in rejecting Dr. Wolin's statement. Therefore, I find the ALJ properly rejected as controlling the opinion of the treating psychiatrist based on substantial evidence in the record.

C. **The ALJ properly evaluated Plaintiff's exertional limitations.**

Plaintiff contends that substantial evidence does not exist in the record to support the ALJ's finding of Plaintiff's exertional limitations. (Plaintiff's brief at 10).

The ALJ stated that he relied on the disability analyst's assessment of Plaintiff's exertional limitations because "after reviewing the medical evidence submitted, that claimant's exertional

limitations were not more restrictive than the State's assessment." (Tr. at 27). This assessment conflicts with treating physician Dr. Cywinski's report that Plaintiff could stand or walk for less than two hours a day and with Plaintiff's testimony that he could only walk or stand for up to 15 minutes and sit for 30 minutes. (Tr. at 257, 439). Although the ALJ's decision did not specifically address the opinion of Plaintiff's treating physician as required by the "treating physician rule" analysis, substantial conflicting evidence in the record supports the ALJ's finding of Plaintiff's RFC.

In making his RFC finding, the ALJ considered medical reports from treating physician, Dr. Balon. (Tr. at 24). Dr. Balon reported on July 5, 2002 that Plaintiff was experiencing right-sided back pain radiating down his right leg. (Tr. at 128). Dr. Balon also found no worsening of Plaintiff's ulcerative colitis. (Tr. at 128).

During a December 31, 2002 exam, Dr. Balon found Plaintiff capable of straight leg raising to 30 degrees with his right leg, normal strength, and range of motion to lower extremities and flexion forward to 65 degrees. (Tr. at 124). During an exam on July 9, 2003, Dr. Balon noted that "patient denies any back problems . . . . He also has not had trouble with his colitis." (Tr. at 122). Dr. Balon went on to record Plaintiff's straight leg raise to 85 degrees with the right leg, and range of motion to lower extremities showed flexion forward to 85 to 90 degrees. (Tr. at 122). Dr. Balon further reported Plaintiff "has had good response" to the ulcerative colitis medication. (Tr. at 119). Plaintiff's sciatica was "well

controlled" and Dr. Balon decreased the prescribed dosage of his pain medication. (Tr. at 119).

On August 29, 2003, Dr. Balon noted that Plaintiff had flipped his motorcycle in an accident and as a result, suffered multiple contusions and cervical muscle strain. (Tr. at 116).

During a follow up exam on July 8, 2004, Dr. Balon noted Plaintiff's complaints of back pain and recurrent episodes of colitis. Dr. Balon reported Plaintiff's mild abdominal tenderness, straight leg raise to 60 degrees on the right, flexion forward to 60 degrees, normal extension side-to side, deep tendon reflexes in the lower extremities of 2+ and normal strength in the lower extremities. (Tr. at 114).

Dr. Balon again examined Plaintiff on September 21, 2004 due to lower back pain radiating down his right leg and numbness in the right foot. (Tr. at 113). The exam resulted in findings similar to the July 8, 2004 exam with the exception of Plaintiff's right toe extension of 4/5 and flexion forward to about 40 degrees. (Tr. at 113).

The ALJ also considered the post-operative reports of Dr. Hamill. (Tr. at 25, 169-77). Dr. Hamill reported the MRI findings of a recurrent disc herniation at L5-S1 on the right side on that date. (Tr. at 177). On December 5, 2001, Dr. Hamill reported that Plaintiff was off all pain medication and had no complaints. (Tr. at 174). Dr. Hamill noted that Plaintiff's x-rays showed moderate degenerative arthritis at L5-S1. (Tr. at 174). Finally, Dr. Hamill

examined Plaintiff on December 22, 2004. (Tr. at 170). Plaintiff complained of increasing back pain radiating down his right leg to his ankle with numbness and tingling. (Tr. at 170). Dr. Hamill noted Plaintiff had a normal gait, forward flexion with fingertips to proximal tibias and normal extension, lateral rotation and bending. (Id.) He furthered noted normal strength in lower extremities and negative straight leg raises. (Id.) The MRI evaluation showed a central disc protrusion at the L5-S1 level. (Id.)

The ALJ also considered treating physician, Dr. Cywinski's reports from July 24, 2001 through June 10, 2004. (Tr. at 26, 255-290). On August 13, 2001, Dr. Cywinski reported a diagnosis of acute colitis which improved after two weeks of treatment. (Tr. at 286-87). Dr. Cywinski reported Plaintiff's symptoms had resolved by January 21, 2002. (Tr. at 279). Although Plaintiff experienced increased symptoms during narcotics withdrawal and binge drinking, the symptoms decreased with medication. (Tr. at 266-78). After receiving treatment for an abscess in December 2003, Plaintiff was noted as doing "quite well" the following month. (Tr. at 263). In April 2004, Dr. Cywinski noted Plaintiff's complaint of increasing abdominal pain. (Tr. at 261). Finally, Dr. Cywinski opined in a disability determinations report dated June 10, 2004 that Plaintiff could occasionally lift and carry, could engage in limited standing and/or walking for less than two hours per day, could sit, push

and/or pull with no limitations, and needed to be near a restroom. (Tr. at 257).

Consultative physician, Dr. Balderman, reported on July 15, 2004, that Plaintiff walked with a normal gait, squatted to 60% of full, needed no assistance in rising from a chair or getting on the examining table. (Tr. at 250). Dr. Balderman reported Plaintiff's abdomen to be "non-tender." (Tr. at 251). Plaintiff's lumbar spine showed "flexion 60 degrees, extension 0 degrees, lateral flexion 10 degrees and rotation 10 degrees . . . . Straight leg raising . . . at 40 degrees in the right." (Tr. at 251). In addition, Plaintiff showed normal strength in the extremities. (Id.)

Finally, the ALJ relied on the "Physical Residual Functional Capacity Assessment" of disability analyst S. Johnson, who reported on August 30, 2004, that Plaintiff had the exertional limitations of occasionally lifting/and or carrying a maximum of 20 pounds, frequently lifting and/or carrying a maximum of 10 pounds, standing and/or walking a total of six hours in an eight hour workday, and unlimited ability to push and/or pull. (Tr. at 292). The analyst also determined Plaintiff's postural limitations to be occasional climbing, balancing, stooping, kneeling, crouching, crawling, and found Plaintiff suffered from no other limitations. (Tr. at 292-94). The analyst explained that the doctor's examination, spinal x-ray, and Plaintiff's activities of daily living do not support finding a significant limitation in Plaintiff's ability to stand. (Tr. at 295).

In making his determination, the ALJ properly considered the medical reports of treating physicians Dr. Balon, Dr. Hamill, and Dr. Cywinski, as well as the report of consultative physician, Dr. Balderman and disability analyst, S. Johnson. I find the ALJ properly relied on the state's determination for Plaintiff's exertional limitations based on substantial evidence in the record.

### D. The ALJ properly evaluated Plaintiff's subjective complaints.

Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony concerning his symptoms and the severity of his pain.

The ALJ must consider Plaintiff's statements about the effects of his pain and symptoms on his activities of daily living and ability to work. 20 CFR 404.1529. However, the ALJ must also consider whether the medical evidence shows that Plaintiff's medical impairments could reasonably be expected to produce Plaintiff's stated pain and symptoms. Id. The ALJ must then determine the effect of Plaintiff's pain and other symptoms to diminish his capacity for work activities to the extent that Plaintiff's pain is reasonably accepted as consistent with the objective medical evidence and other evidence. Id. Other evidence includes statements about daily activities and efforts to work. Id.

Here, after reviewing the medical evidence, the ALJ found "generally credible" Plaintiff's statements about "the intensity, duration and limiting effects" of his symptoms. (Tr. at 24). At the hearing, Plaintiff stated that he could walk or stand for up to two

minutes, bend, sit for up to 30 minutes, and lift or carry up to ten pounds. (Tr. at 439). The Plaintiff further stated that he could perform light household chores, and attended physical therapy, vocational rehabilitation training, and counseling sessions without problems. (Tr. at 24).

Plaintiff's attempts to obtain employment, activities of daily living and the medical evidence in the record provide substantial evidence to support the RFC finding by the ALJ. Therefore, I find that the ALJ properly evaluated Plaintiff's subjective complaints.

**E. The ALJ properly found Plaintiff's substance use was a contributing material factor to the determination of disability under the Act.**

Plaintiff contends that his substance use was not material to the determination of disability under the Act. (Plaintiff's Brief p. 12). To determine whether substance use is a contributing material factor to Plaintiff's disability, the ALJ must consider whether Plaintiff is disabled within the meaning of the Act based solely on his remaining limitations. 20 CFR §§ 404.1535 and 416.935.

In this case, the ALJ determined Plaintiff was not disabled under the Act based solely on his remaining limitations. (Tr. at 30). Therefore, the ALJ properly found Plaintiff's substance use was a contributing material factor to the determination of disability.

**F.   The ALJ properly found Plaintiff able to perform other work in the local and national economy.**

Plaintiff contends that the ALJ's finding that Plaintiff is able to perform other work is not supported by substantial evidence. (Plaintiff's brief at 14). In determining whether Plaintiff is able to perform other work, the ALJ must consider Plaintiff's residual functional capacity, age, education and work experience. 20 CFR §§ 404.1520, 416.920.

Here, the ALJ found Plaintiff had the residual functional capacity to perform light work, was a "younger individual," and possessed a GED with some additional training. (Tr. at 29). The ALJ also found Plaintiff had non-exertional limitations. (Tr. at 29). As previously discussed, the record contains substantial evidence supporting the ALJ's findings regarding Plaintiff's limitations.

The ALJ posed a hypothetical to the vocational expert which included Plaintiff's age, education, exertional limitation of light work, and Plaintiff's non-exertional limitations including the need to be near a bathroom twice a day, the ability to understand and follow simple directions and instructions, perform simple tasks, maintain attention/concentration, maintain a regular schedule, difficulty in relating to people, and the need for low-stress employment. (Tr. at 452). The vocational expert testified that light exertional commercial cleaning jobs and assembly production work exist in the Buffalo and national economy. (Tr. at 452).

Therefore, because the record contains substantial evidence supporting the ALJ's findings with respect to Plaintiff's limitations, and the hypothetical posed to the vocational expert included Plaintiff's limitations, I find that the ALJ properly found Plaintiff able to perform work available in the Buffalo and national economy.

## **CONCLUSION**

For the reasons set forth above, I conclude that the ALJ's decision is supported by substantial evidence in the record and, therefore, the Commissioner's motion for judgment on the pleadings is granted. Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
    MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
       October 13, 2009